**In the Interest of Tyrone James WALL, a child, Appellant.**

No. 64239.

Supreme Court of Iowa.

Aug. 27, 1980.

David Arthur Adams of Legal Services Corporation of Iowa, Burlington, for minor child-appellant.

Robert Todd of Edward Dailey Law Offices, P. C., Burlington, for mother-appellee.

Thomas J. Miller, Atty. Gen., John G. Black, Spec. Asst. Atty. Gen., and Francis C. Hoyt, Jr., Asst. Atty. Gen., for State of Iowa.

Considered by REYNOLDSON, C. J., and LeGRAND, UHLENHOPP, ALLBEE and McGIVERIN, JJ.

ALLBEE, Justice.

This appeal arises from a determination by the juvenile court that subsection 232.-2(5)(c)(1), The Code 1979, is unconstitutionally vague both on its face and as applied. The factual background of the case is as follows. In January of 1977, appellee Pamela Wall, then age fifteen, gave birth to a son, Tyrone, who resided with her for approximately one year. The man believed to be Tyrone's natural father has been absent since the child's birth. Sometime in January, 1978, the local office of the state Department of Social Services received a report that Tyrone was not receiving proper care. Subsequently, Pamela entered into a voluntary placement agreement with that agency, pursuant to which the child was placed in foster care. Approximately four months later, a petition alleging Tyrone to be a child in need of assistance was filed in the juvenile court. As a result of Pamela's execution of a second voluntary placement agreement, however, no formal ruling was made on the petition. During all of this time, Pamela remained in periodic contact with the Department of Social Services for counseling and related services. She also had visitations with the child, although apparently on a sporadic basis. Pamela's contact with the agency and the juvenile court continued, culminating with the filing of a petition in July of 1979 which again alleged Tyrone to be a child in need of assistance. That petition was based upon the subsection challenged here, which provides as follows:

"Child in need of assistance" means an unmarried child:

.    .    .

c. Who has suffered or is imminently likely to suffer *harmful effects* as a result of:

(1) *conditions* created by the child's parent, guardian, custodian; . . . .

§ 232.2(5)(c)(1), The Code 1979 (emphasis added).

The petition merely recited the above-quoted statutory language; it contained no factual allegations as to the "conditions" created by Pamela which resulted in "harmful effects" to the child. Pamela responded with a motion to dismiss, asserting that subsection 232.2(5)(c)(1) was unconstitutionally vague both facially and as applied, and that the notice she received was so deficient as to deprive her of due process of law.[1] The juvenile court sustained the motion based upon the vagueness challenge, and this appeal followed.[2]

■ I. In evaluating a challenge to the constitutionality of a statute based upon vagueness grounds, this court has recognized a distinction between criminal and civil statutes. *E.g., MRM, Inc. v. City of Davenport*, 290 N.W.2d 338, 344 (Iowa 1980); *Knight v. Iowa District Court*, 269 N.W.2d 430, 432 (Iowa 1978). As a general rule, legislation which is either criminal or penal in nature will be subjected to a more exacting standard of scrutiny than civil remedial or regulatory enactments. *MRM*, 290 N.W.2d at 344; *Knight*, 269 N.W.2d at 432. *See Davis v. Smith*, 583 S.W.2d 37, 41 (Ark.1979).

■ While it is clear that the statutory provision involved in this case contains no criminal sanctions, we are not of the opinion that this automatically requires the application of a standard of review such as that which would be used in the civil remedies context. Rather, in determining the level of scrutiny to be employed in any particular vagueness case, we believe that the focus should necessarily be upon the various interests affected, the purpose underlying the enactment in question and the potential deprivation which could result from its application.[3] *See People v. D. A. K.*, 596 P.2d 747, 751 (Colo.1979), *appeal dismissed*, 444 U.S. 987, 100 S.Ct. 515, 62 L.Ed.2d 416 (1980). *See also Custody of a Minor*, 79 Mass.Adv.Sh., 2099, 393 N.E.2d 379, 383 (1979); *In re Trapp*, 593 S.W.2d 193, 203 (Mo.1980). Consequently, the degree of specificity constitutionally required of noncriminal statutes will vary, depending upon these factors. *See D. A. K.*, 596 P.2d at 751.

■ Subsection 232.2(5)(c)(1) implicates several interests: those of a parent in maintaining his or her family, those of the state in its capacity as *parens patriae* and, of course, those of the child. In dealing with these interrelationships between the parent, state and child, this court in another context has recognized a parental interest in the integrity of the family unit. *In re Voeltz*, 271 N.W.2d 719, 723 (Iowa 1979) (termination of parental rights); *In re Lewis*, 257 N.W.2d 505, 510 (Iowa 1977) (termination of parental rights). However, it is also understood that this interest is not absolute, but rather may be forfeited by certain parental conduct. *Voeltz*, 271 N.W.2d at 723; *Lewis*, 257 N.W.2d at 510.

In evaluating vagueness challenges to statutes authorizing the termination of the parent-child relationship, some courts have utilized a strict standard of scrutiny, similar to that employed in the examination of criminal and penal legislation, due to the parental interest involved, *e. g., Roe v. Conn*, 417 F.Supp. 769, 777 (M.D.Ala.1976); *Alsager v. District Court*, 406 F.Supp. 10, 17–19 (S.D.Iowa 1975), *aff'd per curiam on other grounds*, 545 F.2d 1137 (8th Cir. 1976),

---

1. The vagueness challenge at the trial level was to the terms "harmful effects" and "conditions," as used in subsection 232.2(5)(c)(1), and these are the only terms challenged on that ground on appeal.

2. Although the juvenile court in its ruling questioned the constitutionality of the language "a reasonable degree of care" in subsection 232.-2(5)(c)(2), that provision was not challenged by the parties. Accordingly, we view the juvenile court's ruling as pertaining to only those issues before this court on appeal.

3. Concerning potential deprivation vis-a-vis the applicable level of scrutiny, it has been stated that "[a]s the severity of the sanction is increased, the clarity of the standard of conduct prescribed must also increase." *People v. Interest of K. P.*, 182 Colo. 409, 413, 514 P.2d 1131, 1133 (1973).

and the permanence and severity of the resulting deprivation. *See Lewis,* 257 N.W.2d at 510. However, subsection 232.-2(5)(c)(1) deals not with the termination of parental rights, but rather sets out one of several grounds upon which a child in need of assistance adjudication may be based. In the event of such an adjudication, any separation of parent and child will ordinarily be temporary in nature, and therefore the intrusion upon the interest of a parent is less severe than where termination is decreed. Accordingly, the requisite statutory specificity and the degree of scrutiny to be employed in evaluating that specificity will be less strict than in those situations in which a permanent severance of parental rights is involved. Nonetheless, we are mindful that a child in need of assistance proceeding may indeed serve as the initial step in the termination process. *See* § 232.-114, The Code 1979; *D. A. K.,* 596 P.2d at 751. *See also In re Hewitt,* 272 N.W.2d 852, 857 (Iowa 1978) (discussing child in need of assistance provisions of the 1977 Code).

In light of the foregoing considerations, we conclude that the level of scrutiny applicable with respect to the definiteness of section 232.2(5)(c)(1) lies between that which would be employed in the evaluation of a criminal or penal enactment and that applied to civil remedial or regulatory legislation. As such, the language of that statutory provision need not possess the precision and specificity required of the former, yet it must necessarily be less flexible than wording which would be considered permissible in the latter context. *See Davis,* 583 S.W.2d at 42; *Lewis,* 257 N.W.2d at 509–10.

II. As previously stated, Pamela alleges that the terms "harmful effects" and "conditions," as used in subsection 232.-2(5)(c)(1), are impermissibly vague and therefore unconstitutional. To avoid constitutional infirmity due to vagueness, due process requires that statutory language be of an adequate degree of specificity, so as to both convey sufficiently definite warning of the conduct which is proscribed and to provide guidance for the statute's application and enforcement. *See Davis v. Smith,* 583 S.W.2d 37, 41 (Ark.1979); *People v. D. A. K.,* 596 P.2d 747, 751 (Colo.1979), *appeal dismissed,* 444 U.S. 987, 100 S.Ct. 515, 62 L.Ed.2d 416 (1980); *In re D. T.,* 89 S.D. 590, 596, 237 N.W.2d 166, 169 (1975). *See also Grayned v. City of Rockford,* 408 U.S. 104, 108–09, 92 S.Ct. 2294, 2298–99, 33 L.Ed.2d 222, 227–28 (1975); *Alsager v. District Court,* 406 F.Supp. 10, 17–18 (S.D.Iowa 1975), *aff'd per curiam,* 545 F.2d 1137 (8th Cir. 1976); *Knight v. Iowa District Court,* 269 N.W.2d 430, 432 (1978); *State ex rel. Health & Social Services Department v. Natural Father,* 93 N.M. 222, 225, 598 P.2d 1182, 1185 (Ct.App.1979). Thus, the question we must decide is whether the challenged provisions are sufficiently definite and specific, so as to afford these due process requirements considered in light of the interests affected, the purpose of the proceeding and the potential deprivation at stake. In making this determination, we are guided by generally recognized principles applicable to vagueness challenges. *See State v. Aldrich,* 231 N.W.2d 890, 893–94 (Iowa 1975).

We are satisfied that the phrase "harmful effects," as utilized in subsection 232.2(5)(c), pertains to the physical, mental or social welfare of a child, and that the statute conveys this meaning to persons of ordinary intelligence. When so considered, the phrase also affords adequate guidance for its application and enforcement. Other similar terms have been determined to be sufficiently definite to pass constitutional muster in both the dependency and termination contexts. *E. g., In re V. A. E. Y. H. D.,* 605 P.2d 916, 918–19 (Colo.1980) ("environment . . . injurious to [child's] welfare"); *D. A. K.,* 596 P.2d at 751 (1979) ("mistreatment or abuse"); *D. T.,* 89 S.D. at 596, 237 N.W.2d at 169 (1975) ("mistreatment or abuse"; "environment . . . injurious to [child's] welfare"). In light of these considerations, we believe that the phrase "harmful effects" is of sufficient specificity to meet the requirements of due process, both facially and as applied to Pamela.

However, we are constrained to conclude that the term "conditions," as used in the statute, does not sufficiently convey an understanding of what is proscribed to those persons to whom it is directed, a

child's "parent, guardian [or] custodian." The word's many meanings make it too generic for application here. *See Black's Law Dictionary* 256–57 (5th ed. 1979); *Webster's New International Dictionary* 556–57 (2d ed. 1956). Using any of these definitions does little to make the term, as used in subsection 232.2(5)(c)(1), clearly understandable, so as not to mean one thing to one person and something entirely different to another. *Davis*, 583 S.W.2d at 43. The question of what will constitute the "conditions" which will result in "harmful effects" to a child is one about which persons of ordinary intelligence would easily disagree. "Their answers would vary in large measure in relation to their differing social, ethical, and religious views." *Roe v. Conn*, 417 F.Supp. 769, 780 (M.D.Ala.1976). The term is too subjective, and susceptible to multifarious interpretations; one can only speculate as to what acts or omissions would create the "conditions" which are intended to be proscribed by that provision. Consequently, it fails to afford persons of ordinary intelligence adequate notice of the type of parental conduct which would result in a determination that a child is "in need of assistance" under subsection 232.-2(5)(c)(1).

Furthermore, the term "conditions" as contained in subsection 232.2(5)(c)(1) is impermissibly vague as applied here. That term provided Pamela no warning of the acts or omissions which it proscribes. Also, there is nothing in either the petition or the record before us that would adequately inform her of the "conditions" allegedly causing Tyrone to be a child in need of assistance. *Cf. In re Hochmuth*, 251 N.W.2d 484, 488–89 (Iowa 1977) (challenged statutory language not impermissibly vague as applied where conditions mother must meet to avoid termination of parental rights were communicated and explained both verbally and in writing).

Finally, subsection 232.2(5)(c)(1) affords no guidance for its application and enforcement, due to the many possible interpretations with respect to its meaning. The result is the subjective determination, on an ad hoc basis, of what will comprise the proscribed "conditions" which may result in "harmful effects" to a child. In light of this resultant arbitrary interpretation and enforcement, the statute falls short of the standard of specificity which is required. *See Davis v. Smith*, 583 S.W.2d 37, 43–44 (Ark.1979); *Linn v. Linn*, 205 Neb. 218, 222–225, 286 N.W.2d 765, 768–69 (1980).

We are not unmindful of the difficulty encountered in attempting to delineate the many diverse circumstances which may result in a child's being "in need of assistance." "Child neglect is by its very nature incapable of a precise and detailed definition . . . ." *People v. Schoos*, 15 Ill. App.3d 964, 967, 305 N.E.2d 560, 562 (1973). *See also In re Trapp*, 593 S.W.2d 193, 203 (Mo.1980); *In re Neglected Child*, 130 Vt. 525, 531, 296 A.2d 250, 254 (1972). Yet, we observe that the legislature described with greater clarity at least ten other instances in which a child may be determined to be "in need of assistance." § 232.2(5), The Code 1979.[4] It may very well be that the "conditions" alleged to be the cause of the "harmful effects" in this case fall within one or more of those other subsections. In any event, the term "conditions" as used here fails to supply even the minimal notice and standards which due process mandates. In light of the considerations involved, and

---

4. Additional provisions of that section include the following:

    5. *"Child in need of assistance"* means an unmarried child:

    *a.* Whose parent, guardian or other custodian has abandoned the child.

    *b.* Whose parent, guardian or other custodian has physically abused or neglected the child, or is imminently likely to abuse or neglect the child.

    .    .    .

    *d.* Whose has been sexually abused by his or her parent, guardian, custodian or other member of the household in which the child resides.

    *e.* Who is in need of medical treatment to cure, alleviate, or prevent serious physical injury or illness and whose parent, guardian or custodian is unwilling or unable to provide such treatment.

    *f.* Who is in need of treatment to cure or alleviate serious mental illness or disorder, or emotional damage as evidenced by severe anxiety, depression, withdrawal or untoward aggressive behavior toward self or others and

under the applicable scrutiny, the provision lacks the specificity which is constitutionally required.

In sum, we find that the phrase "harmful effects," as used in subsection 232.2(5)(c), is of sufficient specificity to meet the requirements of due process, but conclude that the term "conditions," as used in subsection 232.2(5)(c)(1), is unconstitutionally vague both on its face and as applied in this case. Because of these determinations, we need not consider appellee's remaining due process challenge directed to the deficiency in the notice given her in this proceeding.

AFFIRMED AS MODIFIED.

whose parent, guardian, or custodian is unwilling or unable to provide such treatment.

*g.* Whose parent, guardian, or custodian fails to exercise a minimal degree of care in supplying the child with adequate food, clothing or shelter or refuses other means made available to provide such essentials.

*h.* Who has committed a delinquent act as a result of pressure, guidance, or approval from a parent, guardian, or custodian.

*i.* Who has been the subject of or a party to sexual activities for hire or who poses for live display or for photographic or other means of pictorial reproduction or display which is designed to appeal to the prurient interest and is patently offensive; and taken as a whole, lacks serious literary, scientific, political or artistic value.

*j.* Who is without a parent, guardian or other custodian.

*k.* Whose parent, guardian, or other custodian for good cause desires to be relieved of his or her care and custody.