**In the Interest of T.O., D.J., and V.J., Minor Children,**

**R.S., Natural Mother.**

**State of Iowa, Appellant.**

No. 90–1004.

Supreme Court of Iowa.

May 15, 1991.

Bonnie Campbell, Atty. Gen., Gordon E. Allen, Deputy Atty. Gen., and Judy Sheirbon, Asst. Atty. Gen., for appellant State.

Stephen W. Newport, Davenport, guardian ad litem, for appellant children.

Michael T. Hines of McCarthy & Lammers, Davenport, for resister mother.

SNELL, Justice.

This appeal involves three children, a girl, T.O., born October 24, 1985, and two boys, D.J. and V.J., born October 13, 1986, and October 30, 1987, respectively. All three children have the same mother, R.S., who is thirty-five years old; the two younger children have the same father, while the paternity of the older child is uncertain.

R.S. also has three older children. Further, it appears from the record that all six children have, at one point or another, been placed in foster care.

According to the State's evidence, the three children involved here have been either sexually or physically abused by the mother's boyfriend, I.J. (the father of the two youngest children). I.J. allegedly physically abused the mother as well. The State also asserts that the mother has neglected the children's medical needs, has failed to provide a home free of safety hazards, and has neglected the children's nutritional needs. In addition, the mother allegedly shows marked favoritism toward T.O. and neglects the emotional needs of the others. The mother, for the most part, contends to the contrary.

In April 1988, five of R.S.'s children were adjudicated in need of assistance (CINA) as defined in Iowa Code sections 232.2(6)(b), (6)(c)(2), (6)(d) and (6)(g) (1987) due to a lack of supervision, filthy conditions, and physical abuse in the home. By dispositional order dated June 8, 1988, the five children were placed with three different maternal aunts. Numerous services were offered R.S. and visitation was granted to her as well. At a January 1989 review hearing this disposition was continued.

On April 27, 1989, the disposition was modified to transfer T.O.'s and D.J.'s custody to the department of human services for foster care placement since the maternal aunt they were staying with no longer wished to care for them. On August 7, 1989, the court also ordered that the remaining three children, T. Jr. O., J.O. and V.J., be placed in foster care since the maternal aunt they were staying with was providing insufficient supervision.

A permanency/review hearing was held in December 1989. The three youngest children's foster care placements were continued and J.O. was placed in a residential treatment facility. Services and visitation with the mother continued.

On January 18, 1990, a petition for termination of the parental rights was filed for four children, T. Jr. O., T.O., D.J. and V.J. A termination hearing was held on March 27 and April 24, 1990. On May 23, 1990, the juvenile court filed its order denying the termination of the mother's parental rights regarding all four children and granting the termination of the fathers' parental rights on grounds of abandonment. The juvenile court based its decision on the mother's good faith attempts to improve her parenting ability, on her good visitation record, and on her success in recent months in maintaining a clean and stable home.

On June 21, 1990, the State filed a notice of appeal from this order insofar as it denied termination of the mother's parental rights regarding her three youngest children, T.O., D.J. and V.J. With respect to the older child, T. Jr. O., the State did not appeal noting there was substantial evidence of that child's bonding to the mother.

We transferred the case to the court of appeals where the decision of the juvenile court was affirmed. The State and guardian ad litem now appeal that decision of the Iowa Court of Appeals.

■ Appellate review of termination proceedings is de novo. *In re W.G.,* 349 N.W.2d 487, 491 (Iowa 1984), *cert. denied,* 469 U.S. 1222, 105 S.Ct. 1212, 84 L.Ed.2d 353 (1985). The court gives weight to the findings of fact of the juvenile court, especially when considering the credibility of witnesses, but is not bound by those determinations. *Id.* at 491–92.

The first and governing consideration of the courts in termination proceedings is the best interests of the child. Iowa R.App.P. 14(f)(15).

> We look to the child's long-range as well as intermediate interests. Hence, we necessarily consider what the future likely holds for the child if returned to his or her parents. Insight for this determination can be gained from evidence of the parent's past performance, for that performance may be indicative of the quality of the future care that parent is capable of providing.

*In re Dameron,* 306 N.W.2d 743, 745 (Iowa 1981) (citing *In re O'Neal,* 303 N.W.2d 414, 423 (Iowa 1981); *In re Ponx,* 276 N.W.2d 425, 433 (Iowa 1979)); *see also In re A.C.,* 415 N.W.2d 609, 613 (Iowa 1987).

■ This court recognizes the existence of a parental interest in the integrity of the family unit; nonetheless the court is also cognizant that this interest is not absolute, but rather may be forfeited by certain parental conduct. *In re Wall,* 295 N.W.2d 455, 457 (Iowa 1980). "Because the State, as *parens patriae,* has the duty to assure that every child within its borders receives proper care and treatment, it must intercede when parents abdicate that responsibility." *Dameron,* 306 N.W.2d at 745 (citing *Long v. Long,* 255 N.W.2d 140, 143 (Iowa 1977); *In re Yardley,* 260 Iowa 259, 268, 149 N.W.2d 162, 167–68 (1967)).

■ Furthermore, the statutory termination provisions applicable here are preventative as well as remedial. *Dameron,* 306 N.W.2d at 745. The provisions prescribe action to prevent probable harm to a child but do not require delay until after harm has occurred. *O'Neal,* 303 N.W.2d at 423; *In re Kester,* 228 N.W.2d 107, 110 (Iowa 1975).

■ Finally, the grounds alleged for termination of parental rights must, by statute, be proven by clear and convincing evidence. *See generally* Iowa Code § 232.116 (Supp.1989).

The statutory basis relied on by the State for the termination of R.S.'s parental rights is rooted in Iowa Code sections 232.-116(1)(c), (1)(e) and (1)(g). These sections state that:

1. Except as provided in subsection 3, the court *may* order the termination of both the parental rights with respect to a child and the relationship between the parent and the child on any of the following grounds:

. . . .

c. The court finds that both of the following have occurred:

(1) The court has previously adjudicated the child to be a child in need of assistance after finding the child to have been physically or sexually abused or neglected as the result of the acts or omissions of one or both parents, or the court has previously adjudicated a child who is a member of the same family to be a child in need of assistance after such a finding.

(2) Subsequent to the child in need of assistance adjudication, the parents were offered or received services to correct the circumstances which lead to the adjudication, and the circumstance continues to exist despite the offer or receipt of services.

. . . .

e. The court finds that all of the following have occurred:

(1) The child is four years of age or older.

(2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.

(3) The custody of the child has been transferred from the child's parents for placement pursuant to section 232.102 for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days.

(4) There is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102.

. . . .

g. The court finds that all of the following have occurred:

(1) The child is three years of age or younger.

(2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.

(3) The custody of the child has been transferred from the child's parents for placement pursuant to section 232.102 for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.

(4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

(Emphasis added.)

Section 232.116 vests the court with the authority to terminate both the parental rights with respect to a child and the relationship between the parent and the child. The State contends that this case presents facts which parallel our recent termination case of *In re J.W.D.*, 456 N.W.2d 214 (Iowa 1990). There, we upheld the termination of a mother's parental rights as to her son because her borderline intellectual functioning combined with her mental illness of adjustment reaction with depressed mood made her unable to meet the needs of her son who also had some special needs. *Id.* at 218–19.

Turning to the record in this case, it reveals that R.S. has been tested at an I.Q. level of 55. Mental health professionals have confirmed her as being "mildly mentally retarded." The same professionals diagnosed R.S. as suffering from either an adjustment disorder with depressed mood or schizophrenia due to hallucinations she has experienced.

■ While we have in the past stated that mental disability, standing alone is not a sufficient reason for the termination of the parent-child relationship, it is a contributing factor to the inability to perform the duties of a parent. *In re Wardle*, 207 N.W.2d 554, 563 (Iowa 1973). R.S.'s mental disability is a proper factor for this court to consider in determining whether these children have been, and will be, ne-

glected to the point where their interest and welfare require termination. *See In re A.M.S.*, 419 N.W.2d 723 (Iowa 1988). In *A.M.S.*, we also concluded that termination was appropriate when the disabled parent lacks the capacity to meet the child's present needs as well as the capacity to adapt to the child's future needs. Further, Iowa Code section 232.116(2)(a) states that in considering a termination of parental rights such consideration may include whether the parent's ability to provide for the child's needs is affected by the parent's mental capacity or mental condition.

■ The record shows that Jo Flaugh, a family life specialist with Visiting Nurses for ten years, met with R.S. weekly since the summer of 1988. R.S. was instructed in child development, parenting, household management and nutrition. The weekly visits averaged one and a half hours in length. She described R.S.'s present apartment as immaculate and her prior apartment as clean and neat. She found R.S. to be capable in knowing what to eat; her cooking and cleaning skills were adequate.

R.S. went to the Frontier Center several times weekly and participated in various activities or groups. She has successfully worked on improving her self esteem and has learned to stand up for herself. Jo Flaugh saw no evidence of further manipulation or abuse of R.S. by men. R.S. finds the Frontier Center helpful because she receives assistance when she has a problem with her children. She has also learned better methods of disciplining the children. R.S. states that she loves her children and that they would be better off with her because she would be there for them at all times.

R.S. went to Scott County Community College to learn to read better in order to be a capable parent. Through these efforts she was able to use Mendota system parenting pamphlets. Jo Flaugh felt that this was a big accomplishment for R.S.

Other changes and improvements testified to were that R.S. was less argumentative and will now accept what someone else will suggest to her. The favoritism criti-

cized by the State was thought by the social worker to have occurred because R.S. was trying to protect her daughter from the sexual abuse perpetrator. Although Jo Flaugh witnessed R.S. grow as a person, she felt that if the children were returned to her she would need a lot of support.

R.S. never missed any visits with her children even though she had to walk ten to twelve blocks to the visitation place because she does not own a car. All five of the children were with her during the visits.

R.S. has been under the care of a psychiatrist, Dr. Steven Chang, who saw her once every two weeks. He prescribed medication for chronic depression. Dr. Chang testified that her depression was caused by the removal of her children which were her whole life and from the stress of feeling she might never get them back. Dr. Chang's opinion was that if the children were returned to R.S. she may not need to be on any antidepressant medicine and may not need to see him at all.

Dr. Chang felt that R.S. would never become a really sophisticated mother because of her limited intelligence, but she could become a proper parent. He also felt that R.S. could be relied on to give her children the appropriate medication and provide them with all necessary medical treatment.

Concerning the visits with her children, Dr. Chang said it was detrimental and chaotic to have all five children visiting with her at one time. He favored the return of the children one by one on an intermittent basis with time to adjust and develop an intimate relationship. He also recommended the continuation of support services.

We believe both the juvenile court and court of appeals carefully considered all the factors involved in this case. These courts were not unmindful of R.S.'s mental and intellectual shortcomings. However, both courts agreed that R.S. has progressed steadily since the initial adjudication and that it would be in the children's best interest to return them to her.

R.S.'s prior failures as a parent have been serious, and have exposed her children to several forms of severe harm warranting the termination of her parental rights. However, R.S. has clearly worked very hard to correct her situation. Unlike many other termination cases, this case is marked by evidence of real and steady progress by R.S. in improving her parenting skills in order to provide a good home for her children. We believe the trial court and the court of appeals correctly refused to order the termination of R.S.'s parental rights. Notwithstanding, we are mindful of the trial court's continuing authority to monitor this proceeding to assure that the children's welfare is protected.

DECISION OF COURT OF APPEALS AND JUDGMENT OF DISTRICT COURT AFFIRMED.

All Justices concur except HARRIS, J., who dissents and is joined by LARSON and LAVORATO, JJ.

HARRIS, Justice, dissenting.

I dissent. In termination cases the temptation is sometimes great to allow the needs of the children to yield to the tragic circumstances of a parent. In all respect I suggest that the majority has allowed that to happen here. The background of abuse to these children, formerly tolerated by their unfortunate mother, shows that the children were then in desperate need of rescue. I am not persuaded that the efforts for improvement by their mother, though praiseworthy, sufficiently show a present, even a future, capability to adequately care for her children.

I would reverse and order termination.

LARSON and LAVORATO, JJ., join in this dissent.