# IN THE COURT OF APPEALS OF IOWA

No. 14-0515
Filed July 30, 2014

IN THE INTEREST OF J.W.,
    Minor Child,

K.W., Mother,
    Appellant.
_____

Appeal from the Iowa District Court for Woodbury County, Julie A. Schumacher, District Associate Judge.

A mother appeals the adjudication of her child as a child in need of assistance. **REVERSED AND REMANDED.**

Angela H. Kayl of Kayl Law Office, Sioux City, for appellant.

Thomas J. Miller, Attorney General, Bruce Kempkes, Assistant Attorney General, Patrick Jennings, County Attorney, and Diane Murphy, Assistant County Attorney, for appellee.

Patrick Tott, Sioux City, for father.

Marchelle Denker of Juvenile Law Center, Sioux City, attorney and guardian ad litem for minor child.

Considered by Vaitheswaran, P.J., and Doyle and McDonald, JJ.

**MCDONALD, J.**

A mother appeals from the juvenile court order adjudicating her fourth child, J.W., as a child in need of assistance. J.W. was born in January 2014 and adjudicated in need of assistance in February under Iowa Code section 232.2(6)(b) and (6)(c)(2) (2013). The court declined to adjudicate the child on the third ground pleaded, section 232.2(6)(n). On appeal, the mother contends the grounds for adjudication are not supported by clear and convincing evidence.

I.

We review child-in-need-of-assistance proceedings de novo. *See In re K.N.*, 625 N.W.2d 731, 733 (Iowa 2001). We examine both the facts and law, and we adjudicate anew those issues properly preserved and presented. *See In re L.G.*, 532 N.W.2d 478, 480-81 (Iowa Ct. App. 1995). We give weight to the findings of the juvenile court, especially concerning the credibility of witnesses, but we are not bound by them. *See In re E.H. III*, 578 N.W.2d 243, 248 (Iowa 1998). While giving weight to the findings of the juvenile court, our statutory obligation to review adjudication proceedings de novo means our review is not a rubber stamp of what has come before. We will thus uphold an adjudicatory order only if there is clear and convincing evidence supporting the statutory grounds cited by the juvenile court. *See* Iowa Code § 232.96; *see also In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000). Evidence is "clear and convincing" when there are no serious or substantial doubts as to the correctness of the conclusions of law drawn from the evidence. *See C.B.*, 611 N.W.2d at 492.

II.

The record shows the mother has three older children who were adjudicated in need of assistance in May 2013 under section 232.2(6)(b), (6)(c)(2), and (6)(n). The circumstances ultimately leading to that adjudication culminated in a traffic stop gone wrong. In late April 2013 the mother and her three children were passengers in a car stopped by police. The driver of the vehicle fired several shots from a sawed-off rifle at the police officers, striking one, and then fled. At the time of the stop, the mother had marijuana and drug paraphernalia in her possession. The three older children witnessed the shooting. The mother admitted she would test positive for marijuana and methamphetamine. The mother had extensive criminal history involving drugs and violence prior to the time of the stop. She also had extensive history of involvement with the Nebraska Department of Human Services relating to these three children.

Much changed between the time the three children were adjudicated in need of assistance and J.W.'s birth. The mother participated in and successfully completed inpatient substance abuse treatment. She engaged fully in services provided to her. The three children were returned to her custody and care under the supervision of the department of human services. The mother and the three children spent about two months together in Women's and Children's Center. The family then moved in with the mother's brother for a time before the mother obtained a suitable home for them. The mother was active in therapy and made steady progress in both her recovery process and her relationship with her

children. She took steps to ensure she did not reconnect with negative influences from her past. She obtained a car. The guardian ad litem observed the mother "appears to be making steady gains in her recovery. Her demeanor suggests she is remaining positive during this difficult time and her priorities seem properly focused." The guardian ad litem also noted the mother "is steadily gaining stability in her living situation with continued oversight. The children are progressing behaviorally and emotionally since the transition from [the Women's and Children's Center]. [The mother] is taking the steps necessary for a complete rehabilitation and she is learning to parent sober."

After J.W.'s birth in January 2014, he went home in the legal custody and care of the mother to live with her and his three half-siblings. In March of this year, the guardian ad litem gave this assessment:

> [J.W.] is two months old. He is the youngest son, and youngest child of [the mother]. Since his birth in January, [J.W.] has been staying full-time with [the mother] in her home. [He] is a healthy baby boy and [the mother] appears to be attentive to his needs. [She] has been observed tending to [J.W] and there is a clear bond. [J.W.]'s basic needs appear to be met and he is safe in the home.

Despite the mother's progress and the fact the children were all residing with the mother, the State petitioned to adjudicate the child in need of assistance. In February 2014, the juvenile court issued its adjudication order. The court gave "evidentiary consideration to Exhibits State011 through State059 and GALCASA001 admitted in" the juvenile files for J.W.'s three older half-siblings.[1]

---

[1] The electronic court binder contains exhibits and proposed exhibits. They are identified only by the sequential number in which they were filed in the clerk's office, which, in this case are numbers 1 through 17. With two exceptions, the exhibits themselves do not

Although acknowledging the mother "is working on her substance abuse issues," the court concluded "it is evident that she has not overcome her addiction." The court concluded the preventive nature of our statutes does not require the court to wait until harm to the child has occurred. *See In re L.L.*, 459 N.W.2d 489, 494 (Iowa 1990). Based on the mother's past conduct with her other children, the court adjudicated J.W. in need of assistance pursuant to section 232.2(6)(b) and (c)(2).

III.

On de novo review of the record, we conclude there is not clear and convincing evidence establishing either ground for adjudicating J.W. in need of assistance. To establish a child is in need of assistance under section 232.2(6)(b), the State must prove that a "parent, guardian, other custodian, or other member of the household in which the child resides has physically abused or neglected the child, or is imminently likely to abuse or neglect the child." *See In re J.S.* 846 N.W.2d 36, 41 (Iowa 2014). The term "physical abuse or neglect" and "abuse or neglect" is defined within the juvenile code. The term means "any nonaccidental physical injury suffered by a child as the result of the acts or omissions of the child's parent, guardian, or custodian or other person legally responsible for the child." Iowa Code § 232.2(42).

---

contain any identifying marks or information from which we can ascertain whether any of them are the exhibits mentioned by the court. We thus cannot determine which of the other exhibits, if any, are the ones mentioned in the adjudicatory order as providing the evidence the court found to be clear and convincing proof of the statutory grounds for adjudication. It is essential for our review that exhibits have some identifying information.

With respect to past "abuse or neglect," the challenged statutory provision requires the State to prove by clear and convincing evidence three things. First, the child must have sustained a "physical injury." *See J.S.*, 846 N.W.2d at 41 (stating physical injury to the child is a "prerequisite" to finding past physical abuse or neglect). Second, the physical injury must have been the result of the acts or omissions of specified persons—a parent, a guardian, a custodian, or other person legally responsible for the child. *See In re J.S.*, No. 13-1606, 2013 WL 6700304, at *3 (Iowa Ct. App. Dec. 18, 2013), *aff'd,* 846 N.W.2d 36. Third, the physical injury must have been nonaccidental. *See id.* There is no evidence of physical injury, let-alone nonaccidental physical injury by a statutorily specified person.

The State may also seek to adjudicate a child in need of assistance pursuant to section 232.2(6)(b) if the child is "imminently likely" to suffer "physical abuse or neglect," as defined above. "Imminently likely" is not defined by the code. *J.S.*, 846 N.W.2d at 43. Our supreme court has considered several definitions:

> Relying on a dictionary definition, we have defined "imminent" for purposes of our self-defense statute to mean "'ready to take place,' 'near at hand,' 'hanging threateningly over one's head,' and 'menacingly near.'" *State v. Shanahan*, 712 N.W.2d 121, 142 (Iowa 2006) (citing Webster's *Third New International Dictionary* 1130 (unabr. ed. 2002)). Relying on this same definition, we explained in another case that "imminent" means a threatened act "is impending or about to occur." *State v. Lane*, 743 N.W.2d 178, 182 (Iowa 2007). "Imminent" has also been defined to mean "on the point of happening." *Black's Law Dictionary* 750 (6th ed.1990).

*Id*. Our court defined the term as "an immediate risk of the statutorily proscribed harm; and a real, as opposed to speculative or conjectural, risk of statutorily

proscribed harm." *J.S.*, 2013 WL 6700304, at *3. Regardless of the exact denotation, our "[c]ase law supports a liberal interpretation of the phrase "imminently likely" in the CINA context." *J.S.*, 846 N.W.2d at 43.

Even under the most liberal interpretation of the phrase "imminently likely" there is not clear and convincing evidence J.W. is imminently likely to suffer the statutorily defined harm. There is no evidence of past "physical abuse or neglect" from which we can infer that imminent abuse and neglect may occur. *See id.* (explaining past instances of physical abuse or neglect may support finding of imminent physical abuse or neglect). In this case, the juvenile court's apparent basis for adjudicating the child in need of assistance on this ground was the mother's prior substance abuse. The mother's status as a prior substance abuser is insufficient evidence to establish an imminent likelihood of the statutorily prescribed harm. *See Id.* at 40-42 (holding general characteristics associated with methamphetamine addiction, standing alone, is insufficient to prove a child is imminently likely to suffer statutorily defined harm). The inference of statutory harm is particularly weak here where the evidence points to the mother's remarkable progress since April 2013. The mother has custody and care of all her children. J.W. has never been removed from the home. And the Iowa Department of Human Services concluded J.W. is safe in the mother's home.

These same considerations also lead us to conclude there is insufficient evidence supporting the adjudication under section 232.2(6)(c)(2). To establish J.W. was in need of assistance under this provision, the State was required to

prove by clear and convincing evidence the child "has suffered or is imminently likely to suffer harmful effects as a result of . . . the failure of the child's parent . . . to exercise a reasonable degree of care in supervising the child." Iowa Code § 232.2(6)(c)(2). Chapter 232 does not define "harmful effects." Our supreme court has provided the following guidance:

> [I]t "pertains to the physical, mental or social welfare of a child." *In re Wall*, 295 N.W.2d 455, 458 (Iowa 1980). Because of this broad definition, we have found such effects established when there was harm to a child's physical, mental, or social well-being or such harm was imminently likely to occur. *See In re B.B.*, 440 N.W.2d [594,] 597–98 [(Iowa 1989)] (finding the State proved the parents' failure to exercise a reasonable degree of care when a child's lack of attendance at school "adversely affected his educational, social, and emotional development"); *In re J.S.*, 427 N.W.2d 162, 165 (Iowa 1988) (finding harmful effects as a result of a failure to exercise a reasonable degree of care in supervising children given that a child was playing outside on the street while the parents' home was locked and a child was "very aggressive and uncontrollable"). Hence, a juvenile court could reasonably determine that a parent's active addiction to methamphetamine is "imminently likely" to result in harmful effects to the physical, mental, or social wellbeing of the children in the parent's care. *See In re A.B.*, 815 N.W.2d 764, 776 (Iowa 2012) (noting "an unresolved, severe, and chronic drug addiction can render a parent unfit to raise children").

J.S., 846 N.W.2d at 41-42.

The court in *J.S.* did note that an "active addiction" to methamphetamine is imminently likely to result in "harmful effects" to a child. *Id.* at 42. But the record in this case does not support adjudication under this provision. The mother no longer has an "active addiction" to methamphetamine. Further, this is not a case where the parent waited until the eve of an important hearing to address her behaviors and express an interest in parenting. *See In re P.L.*, 778 N.W.2d 33, 41 (Iowa 2010). Here, the mother responded to the State's intervention. She

accepted services, changed her associations, successfully completed substance abuse treatment, maintained sobriety, and reunited with her three older children. The service providers involved with this family conclude she is learning to become a good parent and providing a safe and stable home for her children. She had progressed so far from the time of removal of her three older children that J.W. was never removed from the mother's custody and care. Unlike his older siblings, J.W. has never known or been exposed to the drugs, violence, or chaos associated with the mother's prior life. The only life J.W. knows is a relatively calm and peaceful life in the care of his mother.

IV.

We conclude the record before us does not contain clear and convincing evidence the child is imminently likely to be abused or neglected or to suffer harmful effects as a result of a lack of supervision. *See* Iowa Code § 232.2(6)(b), (6)(c)(2); *see also J.S.*, 846 N.W.2d at 40-42. Accordingly, we reverse the adjudication on those grounds and remand for dismissal of the State's petition.

**REVERSED AND REMANDED.**