# IN THE COURT OF APPEALS OF IOWA

No. 18-0238
Filed June 6, 2018

**IN THE INTEREST OF B.S., J.S., and K.S,**
**Minor Children,**

**H.S., Mother,**
        Appellant,

**B.S., Father,**
        Appellant.
_____

        Appeal from the Iowa District Court for Polk County, Susan C. Cox, District

Associate Judge.


        A father and mother appeal an order adjudicating their three children as

children in need of assistance.  **AFFIRMED ON BOTH APPEALS.**


        Ryan R. Gravett of Oliver Gravett Law Firm, Windsor Heights, for appellant

mother.

        Robb D. Goedicke of CGR & R Law Firm, P.C., West Des Moines, for

appellant father.

        Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney

General, for appellee State.

        Nicole Garbis Nolan of Youth Law Center, Des Moines, guardian ad litem

for minor children.


        Considered by Vaitheswaran, P.J., and Potterfield and Tabor, JJ.

**VAITHESWARAN, Presiding Judge.**

A father and mother appeal an order adjudicating their three children as children in need of assistance. The adjudication was based on a founded department of human services child-abuse assessment determining the father sexually abused an older half-sibling. The parents contend the State failed to prove the grounds for adjudication by clear and convincing evidence. They suggest there was no harm to the three children, born in 2006, 2014, and 2017. They also contend they complied with a voluntary safety plan proposed by the department, obviating the need for judicial intervention.

The district court adjudicated the children pursuant to Iowa Code section 232.2(6)(c)(2) and (d) (2017). We address both provisions because "[t]he grounds for a CINA adjudication have 'important legal implications beyond the adjudication.'" *In re J.S.*, 846 N.W.2d 36, 41 (Iowa 2014) (quoting *In re L.G.*, 532 N.W.2d 478, 480 (Iowa Ct. App. 1995)).

Iowa Code section 232.2(6)(c)(2) defines a child in need of assistance as someone "[w]ho has suffered or is imminently likely to suffer harmful effects as a result of . . . [t]he failure of the child's parent, guardian, custodian, or other member of the household in which the child resides to exercise a reasonable degree of care in supervising the child." "Although chapter 232 does not contain a definition of 'harmful effects,'" the phrase "pertains to the physical, mental or social welfare of a child." *Id.* (quoting *In re Wall*, 295 N.W.2d 455, 458 (Iowa 1980)).

Our de novo review of the record reveals the following facts. The parents stipulated that the half-sibling was adjudicated as a child in need of assistance in

a separate action. They also stipulated that the father faced pending criminal charges arising from his interactions with the half-sibling.

In light of the pending criminal charges, the father testified he would not be willing "to admit" he did anything to the half-sibling. *See In re C.H.*, 652 N.W.2d 144, 150 (Iowa 2002) ("The State may not penalize [a parent] for noncompliance with a court order impinging on his right against self-incrimination."). He also stated he might have some issues with following department recommendations for treatment, given the department's failure to identify the nature of the treatment. Nonetheless, he pointed to his compliance with a voluntary safety plan prohibiting unsupervised contact with the children.

The department social worker overseeing the case acknowledged the father's willingness to follow the safety plan but agreed the three children were "at risk of being sexually abused if the father [did] not engage in services." She testified, "[I]t has been founded that [the father] sexually abused [the half-sibling]" and "[i]t would be important to be able to work with the family, and provide services, and support to not only [the father] in the [half-sibling's] case, but also to [the mother] and any services that her children may need ongoing in this case." While recognizing the father "was unable to participate in services" that required him to "make any kind of admission of guilt," she testified there were other services in which the parents could participate. As to the mother, the social worker testified she lacked the capacity to protect the children from abuse.

The mother's testimony bolstered the social worker's opinion. When asked whether she would believe the father did anything inappropriate if the half-sibling's allegations against the father proved to be true, she responded, "I don't know."

She also testified she would allow the father to return to the home if the safety plan were not in place.

We conclude the State proved an imminent likelihood the children would suffer harmful effects from the parents' failure to  exercise a reasonable degree of care in supervising the child, as required by Iowa Code section 232.2(6)(c)(2). Without court intervention there was a significant risk the father would groom the younger children for sexual abuse, as he was alleged to have done with the older half-sibling, and the mother would turn a blind eye.  We turn to the second provision under which the children were adjudicated.

Section 232.2(6)(d) defines a child in need of assistance as someone "[w]ho has been, or is imminently likely to be, sexually abused by the child's parent, guardian, custodian, or other member of the household in which the child resides." The Iowa Supreme Court recently reaffirmed the holding of an opinion applying this provision to strikingly similar facts.  *See In re L.H.*, 904 N.W.2d 145, 150 (Iowa 2017) (citing *In re D.D.*, 653 N.W.2d 359, 361 (Iowa 2002)).  The court stated, "[W]e have previously upheld the CINA adjudication of an eight-year-old boy under Iowa Code section 232.2(6)(d) where the record showed the father 'exceeded all bounds of sexual propriety between himself, his daughter and her eight-year-old friend' yet did not exceed those bounds with the boy."  *Id.* (quoting *D.D.*, 653 N.W.2d at 361).  The court explained, "In finding that the boy was in imminent danger, we took note of 'the common sense notion that, ordinarily, all siblings are at risk when one child has been sexually abused.'"  *Id.* (quoting *D.D.*, 653 N.W.2d at 362)).

The mother argues *In re D.D.* is distinguishable because she and the father agreed to and complied with a safety plan. As discussed, compliance with the safety plan was insufficient to protect these children from the risk of imminent abuse, given the father's non-participation in treatment pending resolution of the criminal charges and the mother's equivocation on whether she would accept the half-sibling's allegations if they were found to be true. We conclude the State proved an imminent likelihood of sexual abuse as required by Iowa Code section 232.2(6)(d).

We affirm the adjudication of the three children as children in need of assistance.

**AFFIRMED ON BOTH APPEALS.**