# IN THE COURT OF APPEALS OF IOWA

No. 18-2045
Filed May 1, 2019

**IN THE INTEREST OF A.C., M.B., and B.E.,**
**Minor Children,**

**STATE OF IOWA,**
        Appellant,

**J.B., Father of M.B.,**
        Appellant.

_____

Appeal from the Iowa District Court for Polk County, Susan Cox, District Associate Judge.

The State appeals an order in a child-in-need-of-assistance proceeding returning custody of a child to her mother and scheduling the return of a second child within forty-five days of the order. **AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

Daniel M. Northfield, Urbandale, for appellant father of M.B.

Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellant State.

Lisa M. Noble of Noble Law Office, Des Moines, for appellee mother.

Erin E. Mayfield of Youth Law Center, Des Moines, guardian ad litem for minor children.

Considered by Vogel, C.J., and Vaitheswaran and Doyle, JJ.

**VAITHESWARAN, Judge.**

The State appeals an order in a child-in-need-of-assistance proceeding returning custody of a child to her mother and scheduling the return of a second child within forty-five days of the order.[1]  The State argues (1) both children would be subject to harm if returned and (2) the juvenile court should have changed the permanency goal to termination of the mother's parental rights.

*I.*      *Background Facts and Proceedings*

This case involves three children, born in 2006, 2009, and 2014.  The department of human services intervened in early 2017 after learning that the father of the youngest child sexually abused the oldest child.  It was later learned that another person sexually abused the second child.  The children's mother agreed to abide by a safety plan.

In time, the department determined the mother lacked insight into the abuse.  The State filed a child-in-need-of-assistance petition.

The juvenile court ordered the children temporarily removed "due to their mother's failure to protect them from sexual abuse and failure to comply with safety plans."  Later, the court confirmed the removal order and adjudicated the children in need of assistance.  In the adjudication order, the court found the mother "demonstrated a marked inability to control her emotions and act appropriately in front of the children."

One year after the adjudication order was filed, the court filed a permanency order continuing the children's placement outside the mother's home.  The court

---

[1] The father of the second child also filed an appeal.  In light of our disposition of the State's appeal, we find it unnecessary to address the merits of his appeal.

simultaneously granted the mother a six-month extension to work toward reunification after exhorting her to show "insight into the abuse and the safety concerns of this case . . . and demonstrate her ability to keep her children safe from sex offenders moving forward."

Two months later, the department reported that the mother shared pictures of the children on her Facebook page that the father of the youngest child "liked." The department also reported an incident at a birthday party in which the mother "requested to Facetime the father of the third child." The service provider who was supervising the party denied the request.

In light of these and other incidents, the department social worker assigned to the case expressed "concern[] regarding [the mother's] inability to determine what [was] appropriate, how to support her children and their best interest by not placing them in the middle of situations or placing/inflicting blame on them." The juvenile court seconded the department's concern in an order entered around the same time as the report. The court reiterated that the mother chose "to be romantically involved with at least three sex offenders" and "[a]t least two of her children [were] sexually assaulted by these men."

Then came the permanency review order that is the subject of this appeal. The court began by reciting the mother's lengthy history of failing to protect the children from sexual abuse. The court then expressed concern that the mother "still enmeshed" the oldest child "in conversations and reminders of . . . her assailant" and "appear[ed] oblivious to [the child's] need to avoid triggering events and reminders of her abuser." The court instructed the mother to "fully address her ongoing relationship with [the man who sexually abused her oldest child] and

plan to set appropriate boundaries to emotionally and physically protect her daughter." The court also required the mother to "work with [the older two children's] therapists to take accountability for the removal—including repeatedly allowing sex offenders access to her children." The mother was again granted a six-month extension to complete these and other goals set forth in the order. At the same time, the court ordered the youngest child "return[ed] . . . to the mother immediately" in light of the "good relationship" between mother and child," their successful participation in joint therapy, and the mother's long-term participation in individual therapy. As for the older children, the court stated continued out-of-home placement was "necessary due to the unresolved mental health, substance abuse and sexual abuse concerns." But the court ordered the second child "return[ed] to the mother within 45 days . . . provided the mother" successfully complied with the goals identified in the order.

The State appealed and sought a stay of the order, which the Iowa Supreme Court granted. The case was transferred to the court of appeals for disposition.

## II.    *Adjudicatory Harm*

The children were adjudicated in need of assistance under Iowa Code section 232.2(6)(c)(2) and (n) (2017). Section 232.2(6)(c)(2) requires a showing that the child "has suffered or is imminently likely to suffer harmful effects" due to a "failure of the child's parent, guardian, custodian, or other member of the household in which the child resides to exercise a reasonable degree of care in supervising the child." *See In re L.H.*, 904 N.W.2d 145, 149–50 (Iowa 2017). "[H]armful effects" relate to "the physical, mental, or social welfare of a child." *In re J.S.*, 846 N.W.2d 36, 41 (Iowa 2014) (quoting *In re Wall*, 295 N.W.2d 455, 458

(Iowa 1980)). Section 232.2(6)(n) authorizes the juvenile court to adjudicate a child in need of assistance if the "parent's or guardian's mental capacity or condition, imprisonment, or drug or alcohol abuse results in the child not receiving adequate care." *See In re M.W.*, 876 N.W.2d 212, 222 (Iowa 2016).

On our de novo review, we agree the mother-child joint therapy sessions went well. The therapists reported the mother "was receptive to [the youngest child's] experiences and worked to support [the child] in her emotional regulation and expression." Similarly, the mother engaged with the second child, who opened up to her more than she did with her foster parents. But, as the juvenile court acknowledged, there was more work to be done. Despite fifteen months of individual therapy, the mother had yet to internalize the danger to her children posed by the men in her life or her role in facilitating the abuse. As the juvenile court stated: "The Court is extremely concerned the mother remains in Facebook contact with [the oldest child's] offender and allows him to see pictures of the child. There are other examples of unsafe boundaries contained in this order." The court found it necessary to have the department develop "a specific plan to address" the mother's continued inability to set appropriate boundaries.

We conclude the order requiring immediate reunification of the third child with her mother and reunification of the second child within forty-five days was premature. While the mother's therapist testified she made progress toward setting safe boundaries, the therapist could not speak to whether the mother was in a position to keep the child safe from sex abusers. Under these circumstances, it was appropriate to first implement the proposed plan outlined by the juvenile court and then await a determination of whether the mother assuaged the court's

concerns.  We reverse those portions of the permanency review order requiring immediate and scheduled return of the second and third children.

### III.    *Permanency Goal*

The State argues the juvenile court should have changed the permanency goal to termination.  We disagree.  The juvenile court afforded the mother an additional six months to work toward clearly specified goals.  *See* Iowa Code § 232.104(2)(b) (requiring court to enumerate specific conditions that must be satisfied during the extension period).  Given the mother's consistent participation in individual therapy, supervised visits, and other services, the court acted well within its authority to afford the mother additional time.  The six-month period has yet to expire.  Accordingly, we conclude the State's request to change the permanency goal is premature.

### IV.    *Disposition*

We affirm the juvenile court's permanency review order in all respects except that we reverse that portion of the order requiring immediate reunification of the youngest child with the mother and reunification of the second child within forty-five days.  We remand for further proceedings consistent with this opinion.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**