# IN THE SUPREME COURT OF IOWA

No. 20–1406

Submitted April 29, 2021—Filed May 21, 2021

**IN THE INTEREST OF A.W.,** Minor Child,

**T.D.,** Mother,

    Appellant.

---

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Polk County, Susan Cox, District Associate Judge.

Mom seeks further review of a court of appeals decision affirming child in need of assistance adjudication of her child. **DECISION OF COURT OF APPEALS VACATED; JUVENILE COURT JUDGMENT REVERSED AND REMANDED.**

Per curiam.

Nicholas A. Bailey of Bailey Law Firm, P.L.L.C., Altoona, for appellant mother.

Thomas J. Miller, Attorney General, Ellen Ramsey-Kacena, Assistant Attorney General, and Kevin J. Brownell and Lily Dayton, Assistant County Attorneys, for appellee.

**PER CURIAM.**

On April 2, 2021, we reversed the termination of Mom's parental rights to three children, A.B., A.C.1, and A.C.2, in *In re A.B.*, 957 N.W.2d 280, 299 (Iowa 2021). This appeal involves Mom's fourth child, A.W., born in April 2020 and adjudicated a child in need of assistance (CINA) shortly thereafter. We explored Mom's history in detail in the termination case, much of which formed the basis of the juvenile court's decision to adjudicate A.W. a CINA and to order removal of A.W. from Mom's care. As discussed below, we reverse the juvenile court's adjudication.

After A.W.'s birth, A.W.'s paternal grandmother took her to Michigan with the intention of serving as guardian to A.W. Mom and the Iowa Department of Human Services (DHS) disagree over whether DHS authorized placement with the paternal grandmother out of state. Mom has provided emails indicating DHS communicated to her that she should have A.W.'s grandmother take A.W. to Michigan, despite DHS—at the same time—petitioning the court to remove A.W. Emails sent to Mom's attorney also indicate DHS communicated that it planned to remove A.W. only if Mom did not find a suitable relative placement. As DHS points out, its approval of an out-of-state placement would require an order pursuant to the Interstate Compact on the Placement of Children (ICPC), which it did not have at the time the child was taken to Michigan. *See* Iowa Code § 232.158 (2020). Nonetheless, we do not construe this back-and-forth between DHS and Mom as Mom's attempt to thwart DHS's involvement in A.W.'s case, as did the district court.

The juvenile court adjudicated A.W. as a CINA based on two grounds: Iowa Code section 232.2(6)(*n*) and section 232.2(6)(*c*)(2). Mom appealed the adjudication of A.W. as a CINA, contending adjudication was improper or, in the alternative, at least removal was improper. We

transferred the case to the court of appeals, which reversed the adjudication based on section 232.2(6)(*n*) grounds but affirmed on section 232.2(6)(*c*)(2) grounds. We granted Mom's application for further review in light of our subsequent resolution of *In re A.B.*

"We review child-in-need-of-assistance proceedings de novo." *In re D.D.*, 955 N.W.2d 186, 192 (Iowa 2021). Through our review of the facts and law we "adjudicate rights anew." *Id.* (quoting *In re K.N.*, 625 N.W.2d 731, 733 (Iowa 2001) (en banc)). The State must prove grounds for CINA adjudication by clear and convincing evidence. *In re J.S.*, 846 N.W.2d 36, 41 (Iowa 2014).

Iowa Code section 232.2(6)(*n*) declares a child is in need of assistance if the child's "parent's or guardian's mental capacity or condition, imprisonment, or drug or alcohol abuse results in the child not receiving adequate care." For the reasons we explained in *In re A.B.*, 957 N.W.2d at 296–98, we agree with the court of appeals that the State failed to provide clear and convincing evidence that Mom had a substance abuse problem resulting in A.W. not receiving adequate care.

With respect to the second ground for adjudication, Iowa Code section 232.2(6)(*c*)(2) declares a child in need of assistance is one,

> c. Who has suffered or is imminently likely to suffer harmful effects as a result of any of the following:
>
> (1) Mental injury caused by the acts of the child's parent, guardian, or custodian.
>
> (2) The failure of the child's parent, guardian, custodian, or other member of the household in which the child resides to exercise a reasonable degree of care in supervising the child.

"Although chapter 232 does not contain a definition of 'harmful effects,' we have noted it 'pertains to the physical, mental or social welfare of a child.' " *In re J.S.*, 846 N.W.2d at 41 (quoting *In re Wall*, 295 N.W.2d 455,

458 (Iowa 1980)). "Case law supports a liberal interpretation of the phrase 'imminently likely' in the CINA context." *Id.* at 43.

Many of the facts in this case overlap with the facts in *In re A.B.*, and the State advances the same reasoning for CINA adjudication as it did for termination of Mom's parental rights, including her having a clandestine relationship with Dad and ongoing concerns about drug use and domestic violence. We discussed in *In re A.B.* why the State failed to prove those claims by clear and convincing evidence. 957 N.W.2d at 294–99. Mom's toxic relationship with a former boyfriend and his other girlfriends led Mom to the poor parenting decisions that brought her to DHS's attention. Indeed, other than the December 2019 domestic assault incident with Dad, the vast majority of Mom's criminal history is tied directly to her relationship with the former boyfriend. But as we made clear in *In re A.B.*, Mom successfully removed the drama related to the former boyfriend from her life and has made significant progress in her relationships and in her commitment to her children. *Id.* at 298–99. The district court and the court of appeals failed to recognize Mom's progress through therapy and the distinction between the events surrounding the former boyfriend and the events involving Dad. Mom's relationship with Dad is not the type of toxic relationship she had with her former boyfriend that led her to make poor parenting decisions in the past. Again, we do not minimize the domestic problems Mom has had with Dad and the resulting protective order in place between them. But we do not deem it in the same category as Mom's former relationship, particularly with respect to Mom's ability to parent A.W.

We concluded in *In re A.B.* that the State failed to present clear and convincing evidence that Mom was engaged in a clandestine relationship with Dad. The State offered one additional piece of evidence here, not

presented in that case, to support the CINA adjudication for A.W. Specifically, DHS presented testimony that on or around March 2, 2020, Dad posted two photos to Facebook of Mom and Dad together. Mom testified she no longer used Facebook and so did not know about the photos.

The photos from March are certainly stronger proof of a continuing relationship than the record presented in *In re A.B.* The DHS caseworker testified that the photos appeared recent because she believed they showed Mom was pregnant with A.W. but admitted she could not determine, based on the posting date, when the photo was actually taken.

We reiterate that the record demonstrates Mom has been committed to her children and, apart from the initial founded report of abuse against A.C.1, has not placed A.W. or her other children in any identifiable risk of harm. She has followed DHS recommendations, attended therapy and substance abuse treatment, taken parenting classes, stayed out of legal trouble since December 2019, and otherwise appears to have turned her life around. That is not to say Mom has been perfect. And as we explained in *In re A.B.*, the domestic violence incident with Dad is troubling. But our review of the evidence reveals that Mom has made significant improvements between her behavior in 2018 involving her other children and her behavior in 2020.

We again conclude that "[w]hile Mom has had some contact with Dad, the State has failed to present clear and convincing evidence that she is in the harmful and clandestine relationship suggested by DHS." *In re A.B.*, 957 N.W.2d at 299. In any event, the State failed to offer clear and convincing evidence A.W. is at imminent risk of harm from Mom's failure to "exercise a reasonable degree of care in supervising" A.W., as required

to support adjudication under section 232.2(6)(*c*)(2). Iowa Code § 232.2(6)(*c*)(2). A.W. should not have been adjudicated CINA.

We note that DHS continues to be involved with Mom's other children, and nothing in this opinion affects its ability to respond should events with A.W. warrant a response.

**DECISION OF COURT OF APPEALS VACATED; JUVENILE COURT JUDGMENT REVERSED AND REMANDED.**

This opinion shall not be published.